UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Randolph and Jennifer Rimstad,                    Civil No. 07-2582 (DWF/AJB)

            Plaintiffs,

v.                                                          **MEMORANDUM**
                                                            **OPINION AND ORDER**
Wells Fargo Bank, N.A., as Trustee
for Option One Mortgage Loan Trust
2004-2, Asset-Backed Certificates Series
2004-2, Assignee; and Option One Mortgage
Corporation as Attorney-in-Fact,

            Defendants.

_____

Lee A. Hacklander, Esq., Hacklander Law Offices, P.C., counsel for Plaintiffs.

Ernest F. Peake, Esq., and James M. Jorissen, Esq., Leonard O'Brien Spencer Gale & Sayre, Ltd, counsel for Defendants.

_____

      On June 5, 2007, the Court issued a Temporary Restraining Order ("TRO") in this matter, enjoining Defendants Wells Fargo Bank and Option One Mortgage Corporation (collectively, "the Defendants") from commencing any eviction action against Plaintiffs Randolph and Jennifer Rimstad (collectively "the Rimstads") or otherwise seeking to exclude the Rimstads from possession and/or legal or equitable title to the property located at 3642 Robinwood Terrace, Minnetonka, Minnesota, 55305 (the "Property"). On June 12, 2007, this case came before the Court pursuant to the Rimstads' Motion to

Extend the TRO and Defendants' Motion to Vacate the TRO.  For the reasons set forth below, the Court denies Plaintiffs' motion and grants Defendants' motion.

## BACKGROUND

On March 19, 2004, the Rimstads entered into a consumer credit transaction with Option One Mortgage Corporation ("Option One") to obtain an extension of credit.  The Rimstads executed a mortgage in favor of Option One against the Property, which the Rimstads have owned and lived at for twenty-four years.

Option One retained Ideal Title Solutions, LLC ("Ideal") to close the transaction on its behalf.  Option One delivered a document entitled, "Instructions to Closing Agent," which provided that each borrower must receive two Notices of Right to Cancel (the "Cancellation Notice(s)").  Theresa Dubiel, the President of Ideal, testified that the title company always delivers the Cancellation Notices in accordance with the instructions provided by Option One.  Julia Wathen, the closer on the Rimstad's loan transaction, asserts that at the closing she delivered all four Cancellation Notices to the Rimstads—two for each of the Rimstads.

The Rimstads signed two of the Cancellation Notices, attesting that they had received the requisite four Cancellation Notices:

> ON THE DATE LISTED ABOVE I/WE THE UNDERSIGNED EACH RECEIVED TWO (2) COMPLETED COPIES OF THE NOTICE OF RIGHT TO CANCEL IN THE FORM PRESCRIBED BY LAW ADVISING ME/US OF MY/OUR RIGHT TO CANCEL THIS TRANSACTION.

(Aff. of Julia K. Wathen ("Wathen Aff."), Ex. B.)  But at their depositions, both Randolph and Jennifer Rimstad testified that they had no recollection of whether they received any of the Cancellation Notices.  (Aff. of Ernest F. Peake ("Peake Aff."), Ex. A at 1–2, B at 1–2.)  Yet Jennifer Rimstad also testified that if a document was not true, she would not have signed it.  (*Id.*, Ex. B at 1–2.)

The Cancellation Notices provided instructions for canceling the loan.  In particular, the Cancellation Notices stated that any Notice of Rescission must be sent to Option One Mortgage Corporation at 1033 N. Mayfair Road, Suite 201, Wauwatosa, WI.  The Cancellation Notices also stated that, "[y]ou may use any written statement that is signed and dated by you and states your intention to cancel, or you may use this notice by dating and signing below."  (Wathen Aff., Ex. A.)

Option One subsequently assigned the mortgage to Option One Mortgage Loan Trust, for which Defendant Wells Fargo Bank ("Wells Fargo") acts as trustee.  Thereafter, the Rimstads stopped making their monthly mortgage payments.  Because the Rimstads were in default for failing to pay for almost a year, Defendants hired the Minnesota law firm, Reiter & Schiller, to conduct a foreclosure of the Property.  Defendants thereafter foreclosed on the Property and it was sold at a sheriff's sale on December 5, 2006.

The Rimstads allege that they rescinded the loan and that Defendants therefore had no right to foreclose on the Property.  Specifically, the Rimstads allege that approximately one hour before the sheriff's sale, Marie McDonnell, a non-lawyer who operates as "The Mortgage Counselor," sent a Notice of Rescission ("Rescission Notice")

by fax to Reiter & Schiller in St. Paul, MN. The Rimstads admit that they did not sign the Rescission Notice, but claim that McDonnell was their duly authorized agent and acted under a Special Power of Attorney. Along with the Rescission Notice, McDonnell sent a copy of a document entitled, "Special Power of Attorney," which both Randolph and Jennifer Rimstad had signed. According to the Rimstads, their Rescission Notice gave the Defendants notice under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, of their intent to rescind the loan and mortgage transaction pursuant to TILA and 12 C.F.R. § 226 ("Regulation Z").

Defendants did not rescind either the transaction or the mortgage. Because of this, pursuant to statute, the Rimstads had a six-month redemption period, during which they could redeem the mortgage. The six-month statutory redemption period of the Property expired at midnight on June 4, 2007.

On May 31, 2007, the Rimstads filed this lawsuit in Hennepin County District Court, alleging violations of TILA, and seeking to enforce the Rimstad's right to rescind the consumer credit transaction, void the Defendant's security interest in the subject property, and to recover statutory damages. On June 4, 2007—the last day of the six-month statutory redemption period—the Rimstads brought a motion for a TRO requesting that the court extend the statutory redemption period of the Property and enjoin Defendants from instituting eviction proceedings against them. At approximately 3:30 p.m. on June, 4, 2007, Defendants removed the action to this Court. The Court

conducted a telephone hearing on the Rimstads' motion at approximately 5:00 p.m. on June 4, 2007.

During the telephone hearing and in an Order filed June 5, 2007 (the "June 5 Order"), the Court denied the Rimstads' request for a TRO to extend the statutory redemption period of the Property but granted the Rimstads' request for a TRO to enjoin Defendants from instituting eviction proceedings against them. The Rimstads now bring this motion to extend the TRO, and Defendants move the Court to vacate the TRO. Specifically, the Rimstads request that the Court extend the TRO enjoining Defendants from instituting eviction proceedings against the Rimstads. Defendants, on the other hand, request that the Court vacate the TRO enjoining them from instituting eviction proceedings against the Rimstads.

## DISCUSSION

### I.     Standard for Temporary Restraining Order

A temporary restraining order may be granted only if the moving party can demonstrate: (1) a likelihood of success on the merits; (2) that the movant will suffer irreparable harm absent the restraining order; (3) that the balance of harms favors the movant; and (4) that the public interest favors the movant. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). None of the factors by itself is determinative; rather, in each case the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief. *Taylor Corp. v. Four Seasons Greetings, LLC*, 315 F.3d 1039, 1041 (8th Cir. 2003); *West Publ'g Co. v. Mead Data*

*Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986). The party requesting the injunctive relief bears the "complete burden" of proving all the factors listed above. *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *see also Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

    **A.**    **Likelihood of Success on the Merits**

The first *Dataphase* factor requires that the movant establish a substantial probability of success on the merits of his or her claim. *Dataphase*, 640 F.2d at 114. The Rimstads claim that Defendants violated TILA. Specifically, the Rimstads assert that they did not receive four copies of the Cancellation Notices explaining their right to rescind their consumer credit transaction as required under 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(b). Additionally, the Rimstads assert that Option One failed to deliver all "material" disclosures required by TILA and Regulation Z. Specifically, the Rimstads contend that Defendants failed to clearly and accurately disclose the finance charges and the amount financed.

In response, Defendants assert that the Rimstads failed to serve Option One with their Rescission Notice in a timely manner and that the Rimstads' claims therefore expired under the Statute of Repose. Alternatively, Defendants contend that the Rimstads in fact received all four required Cancellation Notices. Additionally, Defendants contend that they disclosed all required finance charges. The Court finds that the Rimstads are not likely to succeed on the merits of their claims that they did not receive four Cancellation

Notices and that Defendants failed to disclose all material finance charges.[1]

### i.   Cancellation Notices

TILA grants "obligors," such as Plaintiffs, the right to rescind the transaction and requires "creditors," such as Defendants, to provide obligors with notice of this right. 15 U.S.C. § 1635(a).  The applicable regulation specifies that in order to provide proper notice, "a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." 12 C.F.R. § 226.23(b)(1).  Further, TILA provides that "[n]otwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this title by a person to whom a statement is required to be given pursuant to this section does no more than create a rebuttable presumption of delivery thereof." 15 U.S.C. § 1635(c).

---

[1] Although the Court need not address whether the Rimstads served Option One with a Rescission Notice in a timely manner, the Court finds that the Rimstads have not demonstrated a substantial probability of success on their claim that their Rescission Notice was timely.  The Rimstads assert that they had an extended right to rescind the loan under 15 U.S.C. § 1635(a) because Defendants failed to give them the requisite number of Cancellation Notices and failed to properly disclose various finance charges.  Even if the Rimstads correctly assert that under TILA they were permitted to send their Rescission Notice to Reiter & Schiller in St. Paul, Minnesota, rather than to Option One at their designated Wauwatosa, WI address, neither of the Rimstads signed the Rescission Notice as required by the Cancellation Notices.  Further, the Rimstads provide no authority for their assertion that McDonnell, a non-lawyer, was authorized to act on their behalf under TILA.  In fact, Defendants point out that the "Special Power of Attorney" document that the Rimstads signed and sent to Reiter & Schiller was a copy, not an original, was not notarized, and was therefore not an enforceable Power of Attorney under Minnesota law.

Here, when the Rimstads signed the Cancellation Notices acknowledging that they each received two copies of the Cancellation Notices, they created a rebuttable presumption of delivery of four Cancellation Notices. *Id.*; *Jackson v. New Century Mortgage Corp.*, 320 F. Supp. 2d 608, 610 (E.D. Mich. 2004). The Rimstads fail to rebut this presumption. Both Randolph and Jennifer Rimstad testified that they had no recollection of whether they received any of the Cancellation Notices. Specifically, when asked whether she received the Cancellation Notices at the closing, Jennifer Rimstad testified, "I don't remember what we got at all. I don't remember. I don't know half of these." (Peake Aff., Ex. B at 1.) Additionally, Randolph Rimstad testified that he could not recall if he received two copies of the Cancellation Notices at the closing. Thus, in their depositions, the Rimstads do not even allege that they did not receive four Cancellation Notices, in contradiction to the Complaint's assertion that they only received one Cancellation Notice.

Further, Jennifer Rimstad testified that if a document was not true, she would not have signed it. Moreover, the evidence shows that both Dubiel and Wathen assert that the Rimstads were delivered four Cancellation Notices at the closing on March 19, 2004. On this evidence, the Rimstads will not be able to rebut the presumption that they received four Cancellation Notices at the closing. Therefore, the Rimstads likely cannot establish a substantial probability of success on the merits of their claims.

    **ii. Material Disclosures**

Additionally, the Rimstads have not demonstrated a substantial probability of

success on their claim that Option One failed to deliver all material disclosures. The Rimstads assert that Option One understated the Rimstads' finance charges by $125 because Ideal allegedly marked-up its title services. Additionally, the Rimstads assert that the amount financed in this transaction was understated by $4,764.40, the difference between Option One's March 12, 2004 Truth In Lending Disclosure Statement ("TILDS") and its final March 19, 2004 TILDS, which was given to the Rimstads' at closing. In response, Defendants assert that the markups related to the abstract or title search, title examination, plat drawing, and assessment search are reasonable and bona fide and do not constitute finance charges. Additionally, Defendants assert that the amount financed was actually overstated, not understated as the Rimstads' suggest.

The applicable regulation provides that closing-agent charges are finance charges only if the creditor: (i) requires the services; (ii) requires the charge; or (iii) retains a portion of the third-party charge. 12 C.F.R. § 226.4(a)(2). Further, the regulation excludes real-estate related fees such as fees for title examination and abstract of title if they are bona fide and reasonable. *Id.* at § 226.4(c)(7). Here, Defendants assert that the fees at issue were charged by Ideal and that they were not required by Option One or retained by Option One. Darcie Cancino, the Director of Compliance for Option One, asserted in an affidavit that fees are bona fide and reasonable. The Rimstads do not point to any evidence in support of the Complaint's assertion that the fees were unreasonable. Thus, based on the evidence before the Court, Defendants will likely prevail on this claim. Additionally, Defendants correctly point out that the amount financed was actually

overstated, not understated, on the chart provided in the Rimstads' memorandum supporting their motion.

Accordingly, the Rimstads have not demonstrated a substantial probability of success on the merits of their claims. Therefore the Court finds that the first *Dataphase* factor favors Defendants.

**B.     Irreparable Harm**

The second factor that the movant must establish is that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). A showing of speculative harm is insufficient to meet this burden. *Id*. Failure to show irreparable harm alone is a sufficient basis for a court to deny injunctive relief. *Gelco Corp.*, 811 F.2d at 420. If denying an injunction results in eviction, then the irreparable harm element is likely met. *See Higbee v. Starr*, 698 F.2d 945, 947 (8th Cir. 1983).

The Rimstads assert that they will suffer irreparable harm if the Court does not extend the TRO because Defendants will have the right to evict them from their home of twenty-four years. In response, Defendants assert that the Rimstads will not suffer irreparable harm because the foreclosure was authorized. Further, Defendants contend that the Rimstads' request for relief is undermined by their delay in bringing an action. Specifically, Defendants point out that the Rimstads stopped making mortgage payments almost two years ago and then waited until the last hour of the six-week period between

notice of foreclosure and the foreclosure sale to take any action. Although the Court acknowledges the Rimstads' significant delays in taking action, the Court recognizes the adverse effects that flow from eviction and finds that this *Dataphase* factor weighs in favor of the Rimstads.

  **C.** **Balance of Harms**

  The third *Dataphase* factor to be considered is whether the harm to the movant in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to the non-movant. *See Dataphase*, 640 F.2d at 114. The Rimstads assert that their lives would be substantially disrupted if the Defendants evict them from their home. Defendants, on the other hand, assert that if the TRO remains in force they will be unable to earn interest income from the Property and will be required to continue paying property taxes on the Property while the Rimstads occupy it.

Additionally, Defendants contend that the title of the Property will become clouded, rendering the Property unmarketable.

  The Court finds that the harm to the Rimstads in the absence of the TRO outweighs the potential harm that excluding the TRO may cause to Defendants. While the Court considers both parties' concerns valid, the Court finds that losing a basic necessity such as shelter is a greater harm to a couple than the Defendants' temporary loss of income. Therefore, the balance of harms tips in favor of the Rimstads.

### D.  Public Interest

The final *Dataphase* factor to be considered by the Court is whether injunctive relief is in the public's interest.  *See Dataphase*, 640 F.2d at 114.  The Rimstads assert that public policy favors protecting the victims of aggressive lending tactics and lending procedures that do not comply with federal statutes.   In response, Defendants assert that public policy favors personal responsibility and the payment of validly-created debts.  Defendants deny any predatory lending practices and assert that the Rimstads attempt to use TILA as a sword to avoid their legal responsibilities.

Although public policy favors the victims of aggressive lending tactics, the Rimstads have not shown that they are likely to succeed on the merits of their claims.  Thus, the evidence before the Court indicates that the mortgage loan was a validly-created debt.  Further, the Court notes that the Rimstads waited almost three years to take any action even though they knew their loan would eventually be foreclosed.  Accordingly, the Court finds that this factor weighs in favor of the Defendants.

## CONCLUSION

Although the second and third *Dataphase* factors weigh slightly in favor of the Rimstads, the first and fourth *Dataphase* factors weigh heavily in favor of Defendants.  Balancing these factors, the Court finds that the Rimstads have not satisfied their burden of demonstrating that an extension of the TRO is warranted.  Assuming that the Rimstads will be required to leave the Property, the Court assumes that Defendants will give the Rimstads a reasonable amount of time to move-out of the home.

It is difficult for the Court to understand why this case has not been settled. Defendants have asserted, and the Rimstads have not denied, that the Rimstads declined Option One's offer to reinstate the mortgage on terms better than those available to any other borrower. The Court is aware that Randolph Rimstad testified that McDonnell negotiated an agreement with the Rimstads under which McDonnell would receive a 20% fee contingent upon the amount of any recovery the Rimstads might obtain if the Rimstads were successful in their efforts to rescind the loan. The Court hopes that the Rimstads were not acting on McDonnell's advice in declining the offer, given McDonnell's financial interest in pursuing rescission of the loan.

**IT IS HEREBY ORDERED** that**:**

1. Plaintiffs' Motion for a Temporary Restraining Order (Doc. No. 10) is **DENIED**.

2. Defendants' Motion to Vacate the Temporary Restraining Order (Doc. No. 13) is **GRANTED**.

Dated: June 15, 2007
s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court